## MALCOM McNEILL ET AL.

### v.

## MALCOM CARUTHERS.

1. STATEMENT—BEQUESTS.—The testator made specific bequests of lots in Chicago, to different persons, "subject to the payment of my debts, the annuity to my wife for her life, and the re-building of houses on my vacant lots in Chicago," the rents, except what might be necessary to pay the above charges, to be paid to the devisees until they arrived at a certain age named, when they were to take in fee, but still charged with the burdens above named. *Held*, that the will plainly showed the general purpose of the testator, that all his vacant lots were to be built up at the expense *pro rata* of all his beneficiaries in his Chicago property; that each devise was charged with this burden as long as, and until the entire purpose of the testator was carried out by the erection of buildings on all his vacant lots, save the water lot, which was excepted.

McNeill v. Caruthers.

2. Wills—Rules of construction—Intention of testator.—The intention of the testator, as gathered from the whole will, is to govern in its construction. It is also a rule in the construction of wills that a latter clause which is repugnant to a former provision, is to be considered as an intention to modify or abrogate the former.

3. Devise subject to burdens.—The devise to appellee was of the rents of lots 5 and 6, he to receive the rents thereof (subject to payments as above stated) until he arrived at the age of thirty years, "then he shall have said houses and lots in fee simple, only thereafter subject to its *pro rata* payment of any debts against my estate created by me or my executors by my directions, and wife's annuity as long as she may live." *Held,* that the word "created" as used in reference to debts, referred not only to debts created at or before appellee arrived at thirty years, but also to such debts as might hereafter be created for building houses on other vacant lots, as intended by the testator; that such bequest was charged *pro rata* with the burden of carrying out the purpose of the testator in improving his vacant lots in Chicago, as expressed in his will; that although appellee at the age of thirty became invested with the fee, yet such fee might be charged with a trust for a special purpose, and when that purpose is accomplished he holds the land discharged of the trust.

Appeal from the Circuit Court of Cook county; the Hon. E. S. Williams, Judge, presiding. Opinion filed December 8, 1879.

Messrs. Wallace & Mason and Messrs. Miller & Frost, for appellants; that all parts of a will are to be construed in relation to each other, so as to form one consistent whole; but where several parts are irreconcilable, the latter must prevail, cited 7 Jarman's Rules, 1 Redfield on Wills, 425; Brownfield v. Wilson, 78 Ill. 467; Frank v. Eggleston, Ill. Syn. Rep.; Grimes v. Hammon, 35 Ind. 198; Scott v. Gurnsey, 60 Barb. 163; Edwards v. Bibb, 3 Ala. 666; Baxter v. Baxter, 122 Mass. 89; Stevenson v. Mayor of Liverpool, 10 Q. B. 81.

No particular language is necessary to create a charge on land: Oakesen's App. 59 Pa.

A devise in fee simple may be charged with an express trust: Maskillie v. Ragland, 77 Ill. 98; Brownfield v. Wilson, 78 Ill. 467; Williams v. Bradley, 3 Allen, 270; Willis v. Watson, 4 Scam. 64; Smith v. Taylor, 21 Ill. 296; Holliday v. Dixon, 27 Ill. 33; Pool v. Blakie, 53 Ill. 495; Mason v. Ely, 38 Ill. 138; Heuser v. Harris, 42 Ill. 425; The People v. Jennings, 44 Ill. 488.

The powers of executors are commensurate with the trusts which are imposed upon them: Hughes v. Washington, 72 Ill. 84.

Mr. MALCOM CARUTHERS *pro se.*, Mr. WILLIAM S. EVERETT, Mr. WILLIAM H. KING and Mr. FREDERICK W. PACKARD, for appellees; that an estate in fee simple is the entire, absolute property, cited 2 Black. Com. 104; 4 Kent's Com. 5; Goodright v. Barron, 11 East. 224; Webb v. Herring, 1 Rolle's Rep. 399.

Words are taken strongly against the grantor in a will as in a deed: Wigram on Wills, 26.

An express intention is not controlled by implications drawn from other provisions in a will: Ward v. Amory, 1 Curt. 419; Wigram on Wills, 32.

Generally as to rule for construction of wills: Shore v. Wilson, 9 C. & P. 525; Jackson v. Lazeure, 5 Cow. 228; Howe v. Van Schack, 3 Comst. 540; Walsten v. White, 5 Md. 304; Allen v. Van Miter, 1 Met. (Ky.) 276; Pool v. Blakie, 53 Ill. 495.

It is not the duty of a court to search for the testator's meaning beyond a fair interpretation of the words: Abbott v. Middleton, 7 H. C. C. 68; Chrystie v. Phyle, 19 N. Y. 348; Cromer v. Pinckney, 3 Barb. Ch. 475; Perkins v. Mather, 49 N. H. 110.

Technical words and expressions must be taken in their technical sense: Lockler's App. 64 Pa. St. 15; Grundy v. Sawyer, Phila. Eq. 9; Evans v. Godhold, 6 Rich. Eq. 35; Town v. Wentworth, 11 M. P. C. C. 526.

A party conveying land with no reservation of rent, conveys the fee, and the accruing rent goes with the fee: Dixon v. Niccolls, 39 Ill. 372; Crosby v. Loop, 13 Ill. 625.

As to jurisdiction of a court of equity to interpret wills: 2 Story's Eq. Jur. § 1065; Townsend v. Radcliffe, 44 Ill. 446.

By a specific legacy the testator negatived any right to apply the property devised to any other purpose: Blake v. Hawkins, 98 U. S. 327; Sedgwick on Construction of State Law, 31; Smith v. Stevens 10 Wall. 326.

WILSON, J.   This was a bill in chancery, brought in the Circuit Court of Cook county, Ill., by Malcom Caruthers, appellee, to obtain a construction of a will made by his grandfather, Malcom McNeill, a citizen and resident of Christian county, Kentucky, who died in February, 1875, having made his last will and testament November 8th, 1873.

The will was duly probated in the County Court of Christian county, Kentucky, at the March term 1875, thereof, and John B. Crudup, of Granville, North Carolina, Malcom McNeill, Jr., then of the State of Mississippi, and appellee, Malcom Caruthers, then of the State of Tennessee, were, by the will, appointed executors thereof, and letters testamentary were duly issued to them by the County Court of Christian county. The testator left a large amount of real and personal property in the States of Kentucky, Illinois and elsewhere, of the estimated value at the time of the testator's death, of about $1,-000,000, to be destributed according to the provisions of his will.   The testator left him surviving Catharine McNeill, his widow, Martha Boddie, his daughter, wife of William P. Boddie, who lives in Christian county, Kentucky; also grandchildren by his son, Thomas Henry McNeill, as follows: Flora Caruthers, wife of John P. Caruthers, Harry C. McNeill, Malcom McNeill, Thomas H. McNeill, living in Chicago; Mish Crudup, wife of John P. Crudup, living in Granville county, North Carolina; B. Franklin McNeill, living in Christian county, Kentucky, and Rivers McNeill, William McNeill and Alexander McNeill, minors, living in Chicago, of whom Malcom McNeill is guardian; and appellee, Malcom Caruthers, the only surviving child of Elizabeth Caruthers, deceased, and who was a daughter of the testator, Malcom McNeill.

The bill prays for an accounting of the rents received by the executor since the death of the testator, and that the complainant may be decreed to have a fee simple title to lots 5 and six in block 116, in School Section addition to Chicago, free from all liens, rights and encumbrances whatsoever; and may be let into the immediate possession thereof.

The defendants to the bill appeared and filed answers.   A

decree was rendered in the Court below in favor of appellee, according to the prayer of his bill, from which decree appellants have brought the case to this Court, and assign as errors: (a), that the Court below had no jurisdiction of the case; (b), that the decree is against the law and the evidence; and (c), that the Court should have entered a decree dismissing the bill.

The main question presented for our consideration, is as to the proper construction of that clause in the will which bequeaths to appellee, Caruthers, the rents of the property therein described, and the fee thereof, upon arriving at the age of thirty years; and whether he then took the property relieved from any burden or debts, except such as had then been actually created by the executors as directed by the will; or whether this property, he having arrived at the age of thirty years, is still held by him, charged with the burden of contributing *pro rata* from its rents to the building fund until all the designated vacant lots of the testator have been supplied with buildings.

In order to a proper solution of this question, a brief summary of the provisions of the will, so far as they relate to the testator's property in the city of Chicago, is necessary.

The testator first directs that his debts be paid from the proceeds of the rents from his Chicago property. He next disposes of his real and personal estate in Kentucky and elsewhere outside of Chicago, the terms of which are not here called in question. But in this clause of his will he says:

" I also give my wife one thousand dollars per annum during her life, to be paid to her in two equal semi-annual payments, from the rents of my Chicago property, so long as she may live. This to be in lieu of dower. *  *  * "

He further directs " that each piece of property at any time and all times rented to be taxed *pro rata* agreeable to its rents, to be held liable and subject to the payment of this annuity during my wife's lifetime, so she is fully and clearly protected in her annuity, i. e., one thousand dollars as long as she lives."

The testator next gives to his daughter, Martha Boddie, the rents of certain houses and lots in the city of Chicago, enumerating and describing them, during her life, and then adds:

McNeill v. Caruthers.

"I give the rents of all the above named lots, with the houses on said lots, and those lots that now have not houses on them, to my daughter, Martha Boddie, during her life, subject always to the payment of my debts and the annuity to my, wife, as before stated, and after her death the said property and rents, subject as stated above, to the payment of my debts and annuity to my wife, Catharine; then the residue of rents, after my debts are paid, if there be any then existing, and the annuity to my wife if she be still living, I give to the then living children of my said daughter Martha; they to receive them until the rents thereof of all the property that she received the rents from, until her youngest child is twenty-one years old, or if dead, would be twenty-one years old if living; then when her youngest child should be twenty-one years old, the fee simple title of all and of the portion pointed out in this will in which she received rents on, shall vest in fee simple and absolutely and completely in her then living children. Should any of her children have died before said period, and leaving children or child living, it or they shall heir as their parent would have done if living.

"The rents of the above lots and houses are, as before expressly named, to be subject to the payment of my wife's annuity, and the payment of my debts contracted by me before my death, and the debts contracted by my executors for me in building such houses on my lots as I may hereafter direct; * * * * and my wife is to receive her annuity from the rents *pro rata* on the rental property as long as she, my wife Catharine, lives."

He adds: "I wish here to remark that I have, prior to this, made my grandchildren, the children of my daughter Martha, deeds to certain lots and houses in the city of Chicago, which gift, having been made prior to this, is to have nothing to do, nor no bearing on, this my last will."

The testator next devises to the children of his deceased son, Thomas Henry McNeill, the rents of certain specified lots without "houses, and with those houses that I may put on, or direct to be put on, said lots; subject always to the *pro rata* payment of my wife's annuity during her life, and to the

payment of my debts created by me in my lifetime, and the debts I may direct my executors to create in building houses on those lots that houses were burnt off of in the great fire of Chicago, in 1871."

This bequest to the testator's grandchildren, by his son, Thomas Henry McNeill, contains a similar clause to that in the bequest to appellee, except that the time limited is until Alexander McNeill, the youngest child of Thomas H. McNeill, and grandson of the testator, shall have arrived at the age of twenty-one years.

Then follows the bequest to appellee, which is as follows: * . *    *    *    "I give to my grandson, Malcom Caruthers, son of my daughter, Elizabeth Caruthers, deceased, subject, as all my property is, to the payment of my debts, the annuity to my wife for her lifetime, and the re-building of houses on my now vacant lots in the city of Chicago, the rents of the following described property, to-wit: the rents of lot (5) five, and (6), in block one hundred and sixteen (116), school section to Chicago. *    *

"The said Malcom Caruthers to receive the rents thereof until he is thirty years old, should he live to that period; then he shall have said lots and houses on said lot in fee simple title, only thereafter subject to its *pro rata* payment of any debts against my estate, created by me, or my executors by my directions, and wife's annuity as long as she may live."

The testator next proceeds to give instructions to his executors in relation to building on the lots that he may not have gotten through with while living. He first directs a four-story house to be built at number 122 Lake street. Secondly, "as the rents supply the means," he desires his executors to put up a block of three-story brick stores at 311–313 and 315 South Clark street." Thirdly, "as the rents as named before of all my property in Chicago may supply the means," he directs his executors to put up a similar house of brick at number 324 South Clark street, and Fourthly, he expresses a wish that the lot on the corner of Clark and Jackson streets, opposite the Grand Pacific Hotel, be leased for a term of years; but if that cannot be leased within two years after his death, he directs

that his executors build a house on the lot, the cost of which should not exceed $80,000, for the building of which, "to aid the rents that may be coming in," presumably rents that were coming in from buildings already erected by the testator in his lifetime, or by his executors by his direction, he authorizes his executors to mortgage said lot for fifty thousand dollars, if necessary, payable in equal payments, in two, three and four years; giving his executors discretion, however, to make the loan in four payments, if they should think it for the best interests of the estate; the expectation doubtless being that the rents of the building and other incoming rents would pay the loan.

This is the only instance in which anything but the rents of the testator's Chicago property is authorized by the will, in building on his vacant lots.

He next directs that a brick house be put on the Market street lot, so soon as the income of the rents may enable his executors to do it, and then in concluding his directions, he adds these words:

"All of which buildings are to be done and performed at the common expense from the rents of my property, to progress in the order above named."

After a careful consideration of the entire will, we can not doubt as to the intention of the testator. He had conceived the idea of putting buildings on all his vacant lots in the city of Chicago, with the single exception of the water lot, and to do it out of the rents of all the property *pro rata*, according to the value of the rents respectively bequeathed; in other words, to build on all the vacant lots at the common expense of all his beneficiaries, and to build the houses as fast as the rents should supply the means.

His intention to do this is manifested in every bequest made, in his instructions to his executors, and is reiterated on almost every page of his will.

A large portion of his estate was located in the city of Chicago, where improved real estate could be rented at remunerative rates, but its value for a practical purpose was destroyed by the great fire of 1871, so far, at least, as any immediate benefits from rents were concerned.

He evidently deemed it of the first importance that build-
ings should be erected, and the property made productive as
soon at it was practicable, or in his own language, as fast as
the rents should supply the means.   In accordance with this
purpose, he commenced to rebuild immediately after the fire,
and continued in the work down to the time of his death, in
1875.   Meanwhile he made his will in 1873, in which he
directed the work to be continued after his death, giving mi-
nute instructions to his executors as to the order in which the
several buildings should be erected—their size, plan, materials,
etc.; and in nearly every instruction he reiterates his wish that
all the vacant lots should be built upon, and that everything
should be done at the common expense—that is, that there should
be a *pro rata* contribution from all the beneficiaries in his will.

The testator doubtless conceived it equitable and just that
each devisee whose property had been improved, should con-
tribute to improve the property of the others, as otherwise the
equality which he doubtless intended, would be destroyed.

While the will is not drawn very artistically, we nevertheless
think it shows plainly the general purpose and intention of the
testator, namely: that all his vacant lots were to be built up
at the expense of all his beneficiaries in his Chicago property.

And we are further of the opinion that each devise is charged
with this burthen as long as, and until the entire purpose of
the testator is carried out by the erection of buildings on all
his vacant lots, save only the water lot.

Having thus arrived at the general intention of the testator,
as expressed in this will, it only remains to consider briefly
the clause containing the bequest to appellee, Malcom Caruthers.

All the books which treat of the construction of wills, con-
stantly repeat the formula that the intention of the testator is
the prevailing consideration in applying all rules of construc-
tion.   In Redfield on Wills, Vol. 1, p. 333, the rule is stated
that where the general intent is clear, and it is impracticable
to give effect to all the language of the instrument expressive
of some particular or special intent, the latter must yield to the
former.   And the general intent overrides all mere technical
and grammatical rules of construction.   And in Cook v.

McNeill v. Caruthers.

Holmes, 11 Mass. 528, C. J. Parker says: "But it is too well established and known to require argument or authorities now to support the position, that devises and legacies in a will may receive a character by construction and comparison with other legacies in the same will, different from the literal and direct effect of the words made use of in said devise; and this because the sole duty of the court, in giving a construction, is to ascertain the real intent and meaning of the testator, which can better be gathered by adverting to the whole scope of the provisions made by him for the objects of his bounty, than by confining their attention to one isolated paragraph. * * We are therefore to look into the whole of this will, and draw from such parts of it as have a bearing under consideration, what was probably the intent and design of the testator, as to the extent and duration of the estate which he has determined to bestow upon this particular grandson."

Another rule is, that a latter clause of a will which is repugnant to a former provision, is to be considered as an intention to modify or abrogate the former. Brownfield v. Wilson et al. 78 Ill. 468, and the text writers *passim*.

In the light of these well settled rules of construction, there seems to us to be several insurmountable obstacles to investing appellee with the fee of the lots in question, discharged from the burthen of contributing to the common fund for the building of houses on the still vacant lots. The first and most important of these is, that it is wholly inconsistent with the intent of the testator, as gathered from a consideration of his will, taking the instrument altogether.

The testator doubtless expected that the rents would be sufficient to complete the buildings before appellee should have arrived at the age of thirty years, and doubtless his expectations would have been realized but for the shrinkage in rental values. But the failure of his expectations can in no way affect the question of his intentions. If any inference could be fairly drawn from it, it would rather be that the testator would have postponed to a still later period appellee's right to the possession and beneficial use of the property devised to him.

Again, under the rule that the latter clause of a will which

is repugnant to a former clause, operates to abrogate the former, the language used by the testator in his directions to his executors, to the effect that all his lots must be re-built upon at the common expense of all his devisees, being the last expression of his will on that subject, overrules and abrogates anything in the clause containing the bequest to appellee inconsistent with or repugnant to this last expression; and hence his claim to the beneficial use and enjoyment of the property must be postponed until all the designated lots have been built upon.

And again, the devise itself to appellee, we think, may be fairly construed, on its face, to include the payment of his *pro rata* share to the building fund, after he shall have arrived at the age of thirty years.

So much of it as bears upon this question is as follows: " I give to my grandson, Malcom Caruthers, subject, as all my property is, to the payment of my debts, the annuity to my wife for her life-time, and the re-building of houses on my now vacant lots in the city of Chicago, the rents of lots five (5), and six (6), etc.; the said Malcom Caruthers to receive the rents thereof until he is thirty years old, then he shall have said lots and houses on said lots in fee simple, only thereafter subject to its *pro rata* payment of any debts against my estate, created by me, or my executors by my direction, and wife's annuity as long as she may live." It is contended by appellee that the word created is used in the past tense, and refers only to debts created at or before appellee arrived at the age of thirty years. We see no reason why it may not be construed both in the future and past tenses, as if it read: created, or hereafter to be created.

The testator had directed his executors to create debts for putting houses on the vacant lots as fast as the rents would admit of it, and he had not restricted them as to time. They were to continue building until all his lots had been built upon.

Construing the word created in the future as well as in the past tense, would be doing no violence to the language, while it would harmonize with the other words of the clause, and especially with the general tenor of the will.

But it is urged by appellee, that inasmuch as he became

invested with the fee simple title to the land on arriving at the age of thirty years, and as a fee simple is the highest title known to the law, it carries with it the full beneficial use of the property conveyed, and that appellee was thereby relieved from the burden of any further contribution to the building fund.

Admitting his premises to be true, his conclusion does not necessarily follow. It is a well established principle of law that a fee in land like any lesser interest, may be conveyed charged with a duty or with the payment of money. Redfield says, a fee may be charged with a trust for a specified purpose, and when the purpose is accomplished, the owner of the fee holds the land discharged of the trust.

And see, also, Perry on Trusts, p. 152. And this we think is the true status of appellee's lands. The fee is vested in him charged with the burthen of contributing *pro rata*, according to its rental value to the building fund; and that under the powers conferred upon the executors by the will, they are entitled to lease the property and apply appellee's *pro rata* share of the rents to the building fund, until all the lots designated by the testator shall have been built upon. If the testator's wife were still living, it would hardly be contended that appellee's land would be discharged from its *pro rata* share of her annuity during her life-time; and yet such a result would logically follow, if, as appellee claims, he holds the land free and clear of all burthens. Her life annuity and the creation of debts by the executors, are reserved in the same language and in the same clause of the will that contains the bequest to appellee, and the fact of her death cannot make any difference so far as the construction of the will is concerned.

If the testator intended to charge appellee's devise with its *pro rata* share of the wife's annuity, he equally intended to charge it with its *pro rata* share of the debts which his executors might create by his direction, until all his vacant designated lots should have been supplied with buildings.

We have not alluded to the question of jurisdiction, because in the view we have taken of the case it became unnecessary.

Upon the whole case we are of the opinion that the decree of the court below was erroneous, and must be reversed.

Decree reversed.